**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

GLORIA RIVERA DE DÁVILA,

    **Plaintiff,**

        **v.**

MORA DEVELOPMENT CORPORATION, *et al.*,

    **Defendants.**

**Civil No.** 21-1459 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

    Plaintiff Gloria Rivera de Dávila ("Rivera") commenced this action on September 22, 2021, alleging violations of Title III of the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA"). Docket No. 1; <u>see</u> 42 U.S.C. §§ 12181 *et seq.*, and 42 U.S.C. §§ 3601 *et seq.* Defendants Condominium Torre Cibeles Board of Directors ("the Board") and Condominium Torre Cibeles Association ("the Association") have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Docket Nos. 26 & 27.) For the reasons set forth below, the Court **DENIES** the Board's motion to dismiss (Docket No. 26), and **GRANTS in part** and **DENIES in part** the Association's motion to dismiss. (Docket No. 27.)

## I.   FACTUAL BACKGROUND[1]

Condominium Torre Cibeles ("Torre Cibeles" or "the Condominium") was developed by Mora Development Corporation, and the first unit was sold in 2007. (Docket No. 1 at p. 1; Docket No. 11 at p. 9.) Torre Cibeles has a Council of Owners, also known as the Association, which is made up of all the individual owners at the property. (Docket No. 11 at p. 9.) The Association names the Board of Directors, while the day-to-day management is handled by Anelam Services Corporation. Id.; Docket No. 1 at p. 2.

Rivera and her late husband, William Dávila de Pedro ("Dávila") bought an apartment at Torre Cibeles on September 28, 2007. (Docket No. 1 at p. 4.) Their apartment is located in Tower I. Id. Dávila was disabled and therefore parked in one of the three handicap parking spaces outside the second-floor elevator entrance to Tower I. Id. The three spaces were marked with blue paint and handicap symbols. Id. The spaces were numbered 172, 173, and 178. Id.

---

[1] The Court construes the following facts from the complaint and amended complaint, as well as the attached exhibits "in the light most favorable to the plaintiff[]" and "resolve[s] any ambiguities" in the plaintiff's favor." See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011) (discussing the Rule 12(b)(6) standard of review); Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998)("[w]hen . . . a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).)"

On or around March 13, 2013, Rivera noticed that all three parking spaces had been altered so they no longer had blue lines or the icon indicating that they were for handicap parking. Id. at p. 5. The markings had been painted over, and the Association had put up a sign stating that the spots were private. Id. Rivera learned that two of the spots had been sold to one of the condominium unit owners and noticed that the tenants of the owner, who were not disabled, began parking in the spots. Id.

What happened next is not clear; it seems the owner of a nearby parking space, spot 171, gave Rivera and her husband permission to park there "until the situation can be resolved by the administration." (Docket No. 11 at p. 23.) That arrangement did not last, however, and on June 7, 2017, the property management company sent a letter to Dávila advising him that he was not allowed to park in spot 171, as it was privately owned. (Docket No. 1 at p. 6; Docket No. 11 at p. 21.) By this time the parking situation had been brought to the attention of the Board of Directors and the U.S. Department of Housing and Urban Development ("HUD"). (Docket No. 11 at p. 23.) Through HUD's intervention, the "Administration of Torre Cibeles" was apparently told to provide Dávila with a reasonable accommodation near the front of the second-floor entrance to Tower I. Id.

The dispute appears to have continued into 2018, however, as evidenced by emails in July of 2018 between Annette Olivieri, a representative of the Condominium, and Rivera, over converting spots 171 and 172 into handicap parking spaces. Id. at p. 19. It appears handicap parking space 172 had recently been sold after the death of its prior owner. (Docket No. 1—1 at p. 25.) Olivieri wrote "I will address parking #172 with HUD and it's [sic] owners, as I told you yesterday, the condominium wasn't involved on those transactions." (Docket No. 11 at p. 19.)

There were no designated handicap parking spaces at Tower I following the sale of the three spots. (Docket No. 1 at p. 7.) The Board of Directors sent a letter to Rivera on July 23, 2018, with the subject line "Parking Spaces — Reasonable Accommodation," stating the letter was "in regard [to] the parking spaces numbered 170, 171, 172 and 173." (Docket No. 1—1 at p. 27.) The letter then detailed when each spot was sold by Mora Development Corporation. Id. at p. 27.

At some point, though not clear when, the Condominium assigned a handicap parking spot to Dávila outside the entrance to Tower II, which was "very far from the entrance" to Tower I. (Docket No. 1 at p. 6.) Rivera found this to "not be a reasonable accommodation at all." Id. Dávila passed away on March 30, 2021. Id. His

handicap parking space outside Tower II was reassigned to a
disabled unit owner living in Tower II.  Id.

Rivera received a handicap placard based on her own
disabilities on June 23, 2021. (Docket No. 1—1 at p. 20.)  On July
15, 2021, Rivera emailed 'Torre Cibeles' and addressed the email
"To Whom It May Be Concerned," requesting that she be given a
handicap parking space at the second—floor elevator entrance to
Tower I and attaching a copy of her handicap parking permit.
(Docket No. 1—1 at p. 23). She stated at the end of her email that
there were three handicap parking spaces near the front door that
"were privately sold illegally which must be returned to the
condominium. I request one of these parking spaces."  Id.  On
August 9, 2021, again via email to 'Torre Cibeles,' and this time
addressed to the Board of Directors, Rivera stated she was
enclosing an application for handicap parking for Tower I, at the
entrance to the second-floor elevator.  Id. at p. 24.  Rivera
reiterated that she believed the handicap spaces were occupied
illegally by non—disabled people, and that one of these spots must
be allocated to her.  Id.  The attached "Medical or Professional
Evaluation for Reasonable Accommodation" form stated that the
disability basis for the request was "cardiac arrythmia, limited
mobility due to leg surgery, neuropathy, herniated discs, and
osteoarthritis."  (Docket No. 11 at p. 17.)  The requested

accommodation was "parking in front of entrance to tower one second floor elevator," and was signed by her cardiologist.  Id.

On August 10, 2021, the management company, via the 'Torre Cibeles' email address, acknowledged receipt of the email and stated it had passed the information on to the Board of Directors. Id. at p. 13.  The same day, Rivera filed a complaint with the Department of Justice for discrimination. (Docket No. 1 at p. 6; Docket No. 1—1 at pp. 34—38.)

Rivera filed the current lawsuit on September 22, 2021, pursuant to the ADA and the FHA. (Docket No. 1.)  Rivera seeks compensatory damages pursuant to the ADA, nullification of the transfer of the parking spaces originally designated as handicap, and attorney's fees, litigation expenses and costs pursuant to the ADA.  Id. at p. 9.  Rivera also seeks a permanent injunction enjoining all defendants from refusing to make reasonable accommodations pursuant to the FHA.  Id. at p. 3—4.

The Board and the Association ("the defendants") moved to dismiss the initial complaint pursuant to Rule 12(b)(6).  (Docket Nos. 26 & 27.)  Rivera opposed the Rule 12(b)(6) motion, (Docket No. 38) but later filed an amended complaint, rendering moot all dispositive motions regarding the initial complaint.  (Docket No. 51.)  The Association and the Board move the Court, pursuant to Federal Rule of Civil Procedure 10(c) ("Rule 10(c)"), to adopt

by reference the previous motions to dismiss, arguing that the amended complaint contains no new factual allegations and only adds new defendants. (Docket Nos. 70 & 71.) Rivera replied to defendants' motions to adopt their motions to dismiss, asserting the same arguments as her first opposition to the motions to dismiss. (Docket No. 72.) As the amended complaint incorporates the original complaint by reference and does not add factual allegations relevant to the Association or the Board, the Court grants the defendants' request to adopt the arguments set forth in their initial motions to dismiss. (Docket Nos. 70 & 71.)

## II.  STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), defendants may move to dismiss an action for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." Id. at 555. In doing so, the Court is "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their favor." Ocasio-Hernández, 640 F.3d at 17.

Although "the elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim," it is "not necessary to plead facts sufficient to establish a *prima facie* case" in order to survive a motion to dismiss. <u>Rodríguez-Reyes v. Molina-Rodríguez</u>, 711 F.3d 49, 54 (1st Cir. 2013). The *prima facie* analysis in a discrimination case is an evidentiary model, not a pleading standard. <u>Id.</u> at p. 51 ("[T]he *prima facie* case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold."). A complaint that adequately states a claim may still proceed even if "recovery is very remote and unlikely." <u>Ocasio-Hernández</u>, 640 F.3d at 13 (citing <u>Twombly</u>, 550 U.S. at 556).

## III. DISCUSSION

The Association's and the Board's motions to dismiss raise different grounds for dismissal and will thus be addressed in turn.

### A.   Condominium Torre Cibeles Board of Directors

In its motion to dismiss, the Board argues that it does not have the capacity to sue or be sued because it does not have a legal personality pursuant to Puerto Rico law, citing Puerto Rico caselaw and Act 129 of 2020, the Puerto Rico Condominium Act. (Docket No. 26 at p. 2.) Rivera opposed this motion, arguing that the Board has not provided any documentary evidence to support its allegations. (Docket No. 38 at p. 8.)

Jurisdiction in this case is premised on federal questions pursuant to the ADA and the FHA, and thus the Court looks first to federal law, not state law, to answer the question on capacity to be sued.  Cf. Davison v. Puerto Rico Firefighters Corps, 479 F. Supp. 2d 243, 246 (D.P.R. 2007)("We will not apply state attorney's fees law to order one party to pay the attorney's fees of another in a federal question case when federal common law clearly dictates that the parties bear their own costs.")(Fúste, J.).  Federal Rule of Civil Procedure 17(b) ("Rule 17(b)") states that capacity to sue or be sued is determined

> by the law of the state in which the district court is held, **except that:** (A) a partnership or other unincorporated association, with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws . . . .

Fed. R. Civ. P. 17(b)(emphasis added).  In Playboy Enterprises, Inc. v. Pub. Serv. Commn. of Puerto Rico, a suit over the constitutionality of an obscenity law, the defendant argued that one of the plaintiffs, the Puerto Rico Cable Television Association, an unincorporated association, lacked capacity to sue pursuant to the Civil Code of Puerto Rico, which only permits an artificial person to sue and be sued if organized by law.  698 F. Supp. 401, 413 (D.P.R. 1988), aff'd as modified, 906 F.2d 25 (1st Cir. 1990)(Pieras, J.).  The court disagreed, citing to Rule

17(b)'s exception to the applicability of state law where a substantive right under the United States Constitution or federal law was at stake. Id.; see also Oskoian v. Canuel, 264 F.2d 591, 593 (1st Cir. 1959)("It is apparent that the present case is not one for enforcing against an unincorporated association a substantive right 'existing under the Constitution or laws of the United States'. Therefore, since the exception has no application, the general rule becomes operative, that capacity to be sued must be governed by the law of the state in which the district court is held . . . .").

When a federal substantive right is claimed, furthermore, "federal courts must apply federal and not state law in determining what constitutes an unincorporated association for capacity purposes." Associated Students of U. of California at Riverside v. Kleindienst, 60 F.R.D. 65, 67 (C.D. Cal. 1973). While varying to some degree, in general, pursuant to federal law "an unincorporated association in the context of Rule 17(b) [is] 'a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective.'" Id. (quoting Local 4076, United Steelworkers v. United Steelworkers, 327 F.Supp. 1400, 1403 (W. D. Pa. 1971)); see also Penrod Drilling Co. v. Johnson, 414 F.2d 1217, 1222 (5th Cir. 1969)(an association is "a body of persons acting

together, without a charter, but upon methods and forms used by a corporation, for the prosecution of some common enterprise.").

Pursuant to the Puerto Rico Condominium Act, approved on August 16, 2020, "[t]he Council of Owners shall not take the form of a corporation or partnership." Act No. 129—2020, Statement of Motives.  The board of directors "constitutes the executive body of the community of owners."  Id. at Section 53.  The board has the task of addressing "all that pertains to good governance, administration, surveillance, and operation of the regime" and managing the financial matters of the council of owners.  Id. Because the council of owners, also known as the association, is not a corporation, and the board has the task of addressing the operation of the regime, the board therefore qualifies as "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective."[2]  See Associated Students of U. of California at Riverside, 60 F.R.D. at 67; cf. E.E.O.C. v. St. Francis Xavier Parochial Sch., 77 F. Supp. 2d 71, 76-77 (D.D.C.

---

[2] Even under state law, a board of directors is not clearly without the capacity to sue and be sued. See Act No. 129—2020 at Section 54 ("when the Council of Owners or **the Board of Directors** shall appear on behalf of the Council in court as defendant or plaintiff . . . ."; id. at Section 59 "nor for having filed an administrative or legal complaint against the Council of Owners or **the Board of Directors** regarding matters pertaining to the administration or upkeep of the common areas."; id. at Section 65 "The owner who prevails in his complaint shall be exempt from the payment of attorney's fees or litigation costs incurred by **the Board** or the Council of Owners, and from the fine that may be imposed on the defendant")(emphasis added).

1999), aff'd sub nom. E.E.O.C. v. St. Francis Xavier Sch., 254 F.3d 315 (D.C. Cir. 2000)(finding that defendant, which was a division of a corporation, was not an unincorporated association because it operated within the charter of the larger corporation).

This case concerns substantive rights pursuant to federal law. See Docket No. 51 at p. 4. Thus, pursuant to Rule 17(b), Puerto Rico law does not apply to determine the Board's capacity to sue or be sued. Fed. R. Civ. P. 17(b). Accordingly, the Board's motion to dismiss is **DENIED**. (Docket No. 26.)

**B.    Condominium Torre Cibeles Association**

The Association argues that the claims against it should be dismissed because 1) the Association was not party to the sale of the parking spaces, which was done between Mora Development Corporation and the unit buyers in 2007 and 2008; 2) that Rivera fails to state a claim for violation of the FHA because she did not plead that Torre Cibeles denied her reasonable accommodation request; 3) that the ADA does not apply to a parking area unless it is a public accommodation and this claim is regarding private parking spaces; and 4) that any cause of action pursuant to the ADA or the FHA is time-barred. (Docket No. 27 at pp. 2—10.)

Rivera responds that she has pled sufficient facts because 1) the sale of the parking spaces was a violation of the 2010 ADA Standards for Accessible Design; 2) that the ADA does not

have a statute of limitations but borrows from state law, which in Puerto Rico would be the three year statute of limitations for discrimination claims; and 3) that the FHA statute of limitations has yet to run because the defendants are committing a continuous violation by not providing parking to the handicap residents of Torre Cibeles.  (Docket No. 38 at pp. 3—8.)

### 1. The ADA Claim

The complaint and amended complaint reference Title III of the Americans with Disabilities Act ("ADA") as one of the applicable laws for plaintiff's suit.  (Docket No. 1 at p. 2; Docket No. 51 at p. 4.)

The ADA is divided into four subparts, prohibiting discrimination against disabled people in employment (Title I), public services furnished by governmental entities (Title II), public accommodations provided by private entities (Title III), and prohibiting retaliation and coercion against disabled persons who exercise their rights under the ADA (Title IV).  See Pierre v. NFG Hous. Partners LP, 2021 WL 5500489, at *3 (D. Me. Nov. 22, 2021), report and recommendation adopted, 2021 WL 5999300 (D. Me. Dec. 20, 2021).  Title III specifically states that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation

     by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). "'Public accommodation' is defined in terms of 12 categories . . . ." Regents of Mercersburg College v. Republic Franklin Ins. Co., 458 F.3d 159, 164 (3d Cir. 2006); see 42 U.S.C. § 12181(7). None of these categories, however, cover residential condominiums. See Regents of Mercersburg College, 458 F.3d at 165 ("residential units such as apartments and condominiums . . . are not covered by the ADA . . . ."); Sutton v. Freedom Square Ltd., 2008 WL 4601372, at *7 (E.D. Mich. Oct. 15, 2008), aff'd sub nom. Sutton v. Piper, 344 Fed. Appx. 101 (6th Cir. 2009)(unpublished)("Federal courts have consistently determined that residential condominiums and apartments are not 'public accommodations.')(collecting cases); Phibbs v. American Property Management, 2008 WL 746977, *3 (D. Utah Mar. 19, 2008) (residential apartment complex and its assigned parking were not places of public accommodation as contemplated by the ADA).

     The exception to this general rule is for "commercial space within apartment complexes." Moore v. Eq. Residential Mgt., L.L.C., 2017 WL 897391, at *3 (N.D. Cal. Mar. 7, 2017); see also Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc., 40 F. Supp. 2d 700, 705-06 (D. Md. 1999)(model unit could be public accommodation if found to be a sales office).

Rivera has not pled any fact alleging that there is a commercial space within Condominium Torre Cibeles. See Docket Nos. 1 & 51. Accordingly, the Association's motion to dismiss pursuant to Rule 12(b)(6) is **GRANTED** as to the ADA cause of action. Rivera may amend the complaint if she has additional facts to show that the ADA does apply.

**2. The FHA Claim**

The Fair Housing Act ("FHA"), on the other hand, is "a broad mandate to eliminate discrimination against and equalize housing opportunities for disabled individuals." Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 782 (7th Cir. 2002). "The Fair Housing Amendments Act of 1988 makes it unlawful to discriminate against 'any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling' on the basis of that person's handicap." Del Río Gordo v. Hosp. Ryder Meml. Inc., 2018 WL 542222, at *1 (D.P.R. Jan. 23, 2018)(McGivern, M. J.)(quoting 42 U.S.C. § 3604(f)(2)). Discrimination pursuant to the statute includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling," 42 U.S.C. § 3604(f)(3)(B), and "a failure to design and construct [a covered

multifamily dwelling] in such a manner that the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons." Del Río Gordo, 2018 WL 542222, at *1 (citing 42 U.S.C.A. § 3604(f)(3)(C)).  The First Circuit Court of Appeals has clarified that disparate treatment and disparate impact are also forms of cognizable discrimination under the FHA.  See Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010)("The [FHA] contemplates three types of claims for perceived discrimination: 'disparate treatment, disparate impact, and failure to make reasonable accommodations.'")(quoting Smith & Lee Assocs. v. City of Taylor, Mich., 102 F.3d 781, 790 (6th Cir. 1996)).

### a. Failure to Provide Reasonable Accommodation

Construing the facts most favorably to the plaintiff, Rivera alleges that both she and her husband requested a reasonable accommodation from Condominium Torre Cibeles and were denied.  See Docket No. 1 at p. 6 (parking assigned by "the Condominium" to her husband "resulted not to be a reasonable accommodation at all" and "[t]he Administration of Condominium Torre Cibeles acknowledged receipt of Plaintiff's request for a reasonable accommodation.").

To establish a prima facie case of failure to accommodate under the FHA, a claimant must show:

  1) that the person is handicapped within the purview of 42 U.S.C. § 3602(h),

> 2)   that the party charged knew or should reasonably have known of his or her handicap,
>
> 3)   that the person requested a particular accommodation that is both reasonable and necessary to allow him or her an equal opportunity to use and enjoy the housing in question, and
>
> 4)   that the party charged refused to make the requested accommodation.

Astralis Condo. Ass'n, 620 F.3d at 67.

"The statute of limitations provides: "An aggrieved person may commence a civil action ... not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." Jafri v. Chandler LLC, 970 F. Supp. 2d 852, 863 (N.D. Ill. 2013)(citing 42 U.S.C. § 3613(a)(1)(A)).

The Association argues that the complaint fails to state a claim because 1) the Association does not administer the parking spaces at the condominium because they are not common elements and 2) Rivera has not alleged that the Association denied her reasonable accommodation requests.   (Docket No. 27 at p. 6—7.) The Association also alleges any FHA claim is barred by the statute of limitations.  Id. at p. 9—10.

### i. *Prima Facie* case for Rivera

In her complaint and amended complaint, Rivera alleges that she had a handicap placard, (Docket No. 1 at p. 6), that on July 15, 2021, she emailed the Condominium to request a handicap

parking space at the second floor entrance to Tower I, (Docket No. 1—1 at p. 23), that she made the request again on August 9, 2021, and included a doctor's note stating her medical needs and the accommodation request of parking near the entrance to Tower I, id. at p. 24 & Docket No. 11 at p. 17, and that the condominium management acknowledged receipt of her email. (Docket No. 1 at p. 6; Docket No. 11 at p. 13.)  Rivera filed a complaint with the Department of Justice for discrimination on August 10, 2021, and this lawsuit on September 22, 2021. (Docket No. 1. at pp. 6 & 9.)

The Association does not seem to dispute that these facts sufficiently allege the first two prongs of the *prima facie* case. See Salehi v. Lakeview Terrace Homeowners Assn., 2022 WL 3018063, at *3 (N.D. Cal. July 29, 2022)(the "facts are sufficient to satisfy the first two elements of his claim" where plaintiff had limited mobility, a parking placard from the state, and he alleged the association was aware of his disability).  The Association seems to contest, however, that Rivera's requested accommodation was reasonable, noting that the Association does not administer or allocate the parking spaces that Rivera wanted to use.  See Docket No. 27 at p. 7.  But in most cases, the question of "whether an accommodation is reasonable and necessary [is] fact-intensive and not suited to resolution on a motion to dismiss or even summary judgment."  Summers v. City of Fitchburg, 325 F. Supp. 3d 203, 211

(D. Mass. 2018), <u>aff'd</u>, 940 F.3d 133 (1st Cir. 2019); <u>see also</u> <u>Jankowski Lee & Associates v. Cisneros</u>, 91 F.3d 891, 896 (7th Cir. 1996), <u>as amended</u> (Aug. 26, 1996)("Whether an accommodation is 'reasonable' is a question of fact, determined by a close examination of the particular circumstances.")(citing <u>United States v. California Mobile Home Park Management Co.</u>, 29 F.3d 1413, 1418 (9th Cir.1994)).

      As to the fourth prong, it is correct that Rivera does not specifically allege that the Association refused her request outright, but it can be inferred that they did not respond based on the subsequent email on August 9, 2021 as a follow up to her first request on July 15, 2021, her filing of a complaint with the Department of Justice on August 10, 2021, and the filing of this lawsuit on September 22, 2021.  <u>See</u> <u>Rodríguez-Reyes</u>, 711 F.3d at 54 ("There need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. What counts is the 'cumulative effect of the [complaint's] factual allegations.')(quoting <u>Ocasio-Hernández</u>, 640 F.3d at 14).  A failure to respond to a request can be considered a denial for purpose of pleading a *prima facie* case.  <u>See</u> <u>Salisbury v. Caritas Acquisitions V, LLC</u>, 2018 WL 10483437, at *3 (C.D. Cal. Nov. 20, 2018)("An undue or unreasonable delay in responding to a request for accommodation may amount to a constructive refusal of the

request."); Salehi, 2022 WL 3018063, at *4 (Where complaint was
filed on May 3, 2022, and plaintiff "Salehi has been attempting to
obtain this accommodation since February 2022 but, to date, the
Association has not granted the request" the court found that "the
facts alleged are sufficient at this stage to show the Association
denied the request, and it DENIES the motion to dismiss the FHAA
claim."). The Association cannot avoid a duty to respond to
reasonable accommodation requests simply because it does not see
the requester's proposed accommodation as feasible. See Castillo
Condo. Ass'n v. U.S. Dept. of Hous. and Urb. Dev., 821 F.3d 92, 96
n.3 (1st Cir. 2016)("The HUD guidelines contemplate that parties
will engage in an interactive process to discuss the need for a
requested accommodation and possible alternatives when the housing
provider refuses to grant that accommodation on the ground that it
is not reasonable."); Weiner v. Prairie Park Condo. Assn. Inc.,
2016 WL 3444210, at *5 (N.D. Ill. June 23, 2016)("[C]ondominium
owners are required to take additional action to ensure that
handicapped residents who require a handicap parking space or other
reasonable accommodation are, in fact, accommodated.")

    Rivera has thus pled sufficient facts to state a *prima
facie* case for FHA discrimination in refusing to provide her a
reasonable accommodation. See Salehi, 2022 WL 3018063, at *4.
Because the suit was filed immediately in 2021 upon not receiving

a response from Torre Cibeles, there is no doubt it is within the two-year statute of limitations.  See 42 U.S.C. § 3613(a)(1)(A). Accordingly, the Association's motion to dismiss is **DENIED** as to the FHA cause of action for Rivera's reasonable accommodation request.

### ii. *Prima Facie* case for Dávila

The complaint also states that Dávila, Rivera's late husband, "was a handicapped person" and "the Condominium, in an attempt to resolve the handicap-parking problem reasonable accommodation, assigned a handicap parking space for him at the entrance to Tower II."  (Docket No. 1 at pp. 4 & 6.)  Rivera alleges this was "not a reasonable accommodation at all" and that it was "very far from the entrance to Tower #1."  Id. at p. 6. The complaint does not include any date when the alternate parking spot was provided by Condominium Torre Cibeles.  Rivera did send an email on July 19, 2018, stating that her "husband has been denied reasonable accommodation for handicap parking since we moved to the Condominium," (Docket No. 1—1 at p. 25), but it is not clear if this email is referring to the new parking spot Torre Cibeles offered, or if this was still prior to the offer of the Tower II spot.

The Association does not specifically address these allegations in its motion to dismiss, and only refers to

"grant[ing] **her** a reasonable accommodation." <u>See</u> Docket No. 27 at
p. 7 (emphasis added).   The Association does argue that all FHA
claims are barred by the statute of limitations, though it argues
so without making any specific reference to the late Dávila's
reasonable accommodation claim.  <u>Id.</u> at p. 9—10.

        The allegations on their face appear to plead a *prima
facie* case for Dávila for the same reasons stated above for
Rivera's request, but the Court is concerned with when exactly
these events took place.  <u>Cf.</u> 42 U.S.C. § 3613(a)(1)(A))("An
aggrieved person may commence a civil action . . . not later than
2 years after the occurrence or the termination of an alleged
discriminatory housing practice . . . ."); <u>Tobin v. Liberty Mut.
Ins. Co.</u>, 553 F.3d 121, 130-31 (1st Cir. 2009)("As we have noted,
. . . a denial [of a request for accommodation] is a discrete
discriminatory act that . . . does not require repeated conduct to
establish an actionable claim.").

        The First Circuit Court of Appeals has stated, however,
that granting a motion to dismiss based on the statute of
limitations is appropriate when "the pleader's allegations leave
no doubt that an asserted claim is time-barred." <u>Gorelik v.
Costin</u>, 605 F.3d 118, 121 (1st Cir. 2010)(quoting <u>LaChapelle v.
Berkshire Life Ins. Co.</u>, 142 F.3d 507, 509 (1st Cir. 1998)).  At
this stage, therefore, dismissal would be inappropriate without a

clear allegation of when Dávila's reasonable accommodation request was denied.  See Chao-Cheng Teng v. Shore Club Hotel Condominiums, 2012 WL 1231955, at *3 (D.N.H. Apr. 12, 2012)(where allegations left doubt "as to whether [defendant]'s refusal to sell her a condominium on account of her race had terminated more than two years before she brought this action," court denied motion to dismiss premised on statute of limitations).  Accordingly, the Association's motion to dismiss is **DENIED** as to the FHA cause of action for Dávila's reasonable accommodation request.

### b. Disparate Impact

A plaintiff can also show discrimination pursuant to the FHA through the disparate impact of a policy or practice.  See Astralis Condo. Ass'n, 620 F.3d 66; Del Río Gordo, 2018 WL 542222, at *3 ("[D]isparate impact cases are the result of policies or practices that are not necessarily intended to discriminate but in fact have a disproportionately adverse effect on a protected class.")(quoting Rhode Island Comm'n for Human Rights v. Graul, 120 F. Supp. 3d 110, 122-23 (D.R.I. 2015)).  "In order to make out a *prima facie* case under a disparate impact theory, a plaintiff must show '(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'"  Id. (quoting Lowe v.

Planning & Zoning Comm'n of the Town of Mansfield, 2018 WL 379010, at *6 (D. Conn. Jan. 10, 2018)).

Plaintiff's complaint, amended complaint, and opposition to the Association's motion to dismiss contain some allegations and arguments that could be construed as alleging that Condominium Torre Cibeles had a policy with a disparate impact on disabled residents. See Docket No. 1 at p. 7 ("The fact that there are no designated handicap parking spaces at Tower I . . . directly in front of the door giving entrance to the second floor elevator is a willful act on the part of all those involved . . . ."); id. at p. 8 ("Defendants have acted with total disregard to the needs of disabled persons who lack mobility due to health conditions . . . .") and Docket No. 38 at p. 8 ("The acts of depriving the handicap residents of Torre Cibeles continue to the present day.").

At this time, the Court is unsure whether disparate impact is a theory of the plaintiff's case. Because neither side has briefed the issue of whether the complaint states a claim pursuant to this theory, the Court will refrain from analyzing it under this framework. The Court expects in the future, however, that the plaintiff will "spell out her theories clearly and distinctly before the [trial] court, on pain of preclusion." Mack v. Great A. and P. Tea Co., Inc., 871 F.2d 179, 183 (1st Cir. 1989).

**IV.   CONCLUSION**

For the reasons discussed above, the Court **DENIES** the Board's motion to dismiss (Docket No. 26), and **GRANTS IN PART** and **DENIES IN PART** the Association's motion to dismiss.   (Docket No. 27.)

The ADA claim is thus dismissed without prejudice, and the FHA claim remains intact.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 23, 2022.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE