IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Gloria Rivera De Dávila<br><br>    Plaintiff,<br><br>        v.<br><br>Mora Development Corporation, et als.<br><br>    Defendants. | **Civil No. 21-01459(GMM)** |

**OPINION AND ORDER**

Pending before the Court is co-defendant Mora Development Corporation's ("Mora") *Motion for Reconsideration* ("Motion for Reconsideration"). (Docket No. 110). Mora moves this Court to reconsider in part its *Opinion and Order* ("Opinion") (Docket No. 105) denying Mora's *Motion to Dismiss the Amended Verified Complaint* ("Motion to Dismiss"). (Docket No. 77).

For the reasons set forth below, the Court **GRANTS** Mora's Motion for Reconsideration and, as to Mora, **DISMISSES** the Complaint with prejudice. Partial judgment will be entered accordingly.

## I. BACKGROUND

A. <u>Relevant Factual and Procedural Context</u>[1]

Condominium Torre Cibeles ("Torre Cibeles") is a Mora developed apartment building in San Juan, Puerto Rico. (Docket Nos. 1 at 1, and 11 at 9).

On September 22, 2021, Plaintiff Gloria Rivera-de Dávila ("Plaintiff" or "Rivera"), filed suit against Torre Cibeles' Board of Directors ("the Board"), Torre Cibeles' Association ("the Association") and Mora.[2] Rivera later amended her Complaint to include Mrs. Monsterat Gubern (Mrs. Gubern) and Dr. Luis García-Paredes (Dr. García).[3] (Docket No. 51).

Rivera alleged violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* ("ADA") and the Fair Housing Amendments Act, 42 U.S.C. §§ 3601 *et seq.* ("FHAA"). (Docket Nos. 1 and 51). On October 12, 2022, the Court dismissed the ADA claims. (Docket Nos. 101 and 102).

Subsequently, upon the Board, the Association, Dr. García and Mrs. Gubern, and Mora's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court issued an Opinion on October 26, 2022. It reiterated the dismissal of all

---

[1] For purposes of Mora's Motion to Dismiss, the facts included herein are taken as true.
[2] Torre Cibeles is managed by a Homeowner's Association (known in state court law as "Consejo de Titulares". P.R. Laws Ann. Tit. 31, § 1921b(h). For clarity purposes, the Court refers to it as "the Association". (Docket No. 11 at 9).
[3] As indicated, Rivera subsequently filed an <u>Amended</u> Verified Complaint where she reiterates all averments of her original Verified Complaint (Docket No. 51 at 1, ¶ 1). She also attached the Verified Complaint as Exhibit 1 to the <u>Amended</u> Verified Complaint. In the interest of clarity, the Court refers to them, indistinctly, as "the Complaint".

ADA claims as to all defendants, including Mora. (Docket No. 105 at 6-7). Accordingly, this Court only addresses the remaining FHAA claim as it exclusively pertains to Mora and Rivera.[4]

Plaintiff and attorney Dávila (R.I.P.) purchased an apartment at Torre Cibeles on September 28, 2007. (Docket No. 1 at 4, ¶ 2). As per Torre Cibeles' master deed, parking spaces 172, 173, and 178 are reserved for residents with disabilities.

---

[4] Rivera asserts that she is the sole Plaintiff in the case before this Court and strongly objects referencing her late husband, Mr. William Dávila-de Pedro, Esq. ("attorney Dávila"), who passed away on March 20, 2021. She insists attorney Dávila bears no relation to her claim against Mora:

> "[P]laintiffs (sic.) late husband is not a part of the Complaint filed against [Mora]. . .as her late husband's demise was on MARCH 20, 2021[.]" (Docket No. 90 at 2) (emphasis in original).

> "[Mora's] allegations are based upon the case of the late attorney [Dávila]. This matter is not part of the [Complaint] and [Mora] should refrain from further using these allegations and any other reference to [P]laintiff's late husband. The present case is based solely on [P]laintiff's allegations regarding her discriminatory case." (Docket No. 125 at 2)

> "Moreover, the late spouse of [P]laintiff[,] [attorney Dávila], whom is not a plaintiff in this case and said allegation (allegations referring to the disabled designation of parking spaces 172, 173, and 178; attorney Dávila's status as a disabled person; and the date when Rivera and attorney Dávila found out that the appearance of the parking spaces had been altered by paint) is not a Cause of Action in the Complaint against [Mora]." Id.

> "[Mora] [,] once again [,] attempts to utilize information that is not pertinent or relevant to the case on hand. Whatever cause of action the late [attorney Dávila] had and/or filed against [Mora], requesting a reasonable accommodation has nothing to do with [P]laintiff's Complaint filed against [Mora]. . .and [that they] should refrain from bringing up this matter as [P]laintiff continues to grieve and mourn the loss of her beloved husband of over 50 years." Id.

> "Plaintiff made reference to her beloved husband's situation only for the purpose of summarizing certain events that had occurred prior to the filing of the Complaint in the above captioned case. . ." Id.

(Docket No. 51 at pp. 3-4, ¶ 5). The three designated handicap parking spaces provided "[residents with] direct access to the door leading to the second floor" ("parking spaces 172, 173, and 178"). (Docket No. 1 at 4, ¶¶ 4-5).

According to Plaintiff, the sale and purchase of parking spaces 172, 173, and 178 was unlawful. (Docket Nos. 1 at 7, ¶ 12; 51 at 2, ¶¶ 2-5; and 51 at 8, ¶ 13). To fully consider Plaintiff's allegations under Rule 12(b)(6) standard, the Court addresses the "ownership or title status" of the parking spaces at issue:[5]

### parking space 172

Mrs. Gubern and Dr. García, former owners of Apartment 812, acquired parking space 172 as part of a 2010 "Conciliation Agreement" between Mora and Dr. García. U.S. Department of Housing and Urban Development ("HUD") Case No. 02-10-0426. (Docket Nos. 1, Exhibit 1 at 27, and 75, Exhibit 4 at 1).

---

[5] Plaintiff only appended the first page of the July 23, 2018 letter addressing the ownership of certain parking spaces, some of which are at the core of Rivera's claim. The Court, however, considers the complete document as included in Docket No. 75, Exhibit 4, which Plaintiff appended to her Complaint and which authenticity is unchallenged. Docket No. 75, Exhibit 4. *See* Gagliardi v. Sullivan, 513 F.3d 301, 305-06 (1st Cir. 2008) (holding that the Court "may augment the facts in the compliant by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice."); Fudge v. Penthouse Intern., Ltd., 84 F.2d 1012 (1st Cir. 1988) ("when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading."); *see also* Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion."); I. Meyer Pincus & Assocs. P.C. v. Openheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991) ("[P]laintiff cannot evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference.").

### parking space 173

The owner of Apartment 1713 purchased from Mora parking space 173 on October 8, 2007. Deed of Sale Number 290. (Docket Nos. 1, Exhibit 1 at 27, and 75, Exhibit 4 at 1).

### parking space 178

Purchased by owner of Apartment 1713, Dr. García. (Docket No. 1, at 2, ¶ 5(a)).

As a handicapped person, attorney Dávila utilized these spaces for years. After the sale of parking spaces 172, 173, and 178, another one, parking space 284, was provided to him for his exclusive use from January 2014 until his passing on March 2021. At such time, Torre Cibeles transferred the parking space to another disabled condominium owner.[6] (Docket Nos. 1 at ¶¶ 6, 10 and 11; and 75, Exhibit 4, at 2).

---

[6] By way of illustration, attorney Dávila (R.I.P.) acquired the use of parking space 284 as part of a January 17, 2014 "Conciliation Agreement" between him and Mora, HUD Case No. 02-13-0458-8. As approved by HUD, the "Conciliation Agreement" stipulates that Mora would:

> create six (6) wheelchair-accessible spaces in the residential parking facility. Specifically, three accessible parking spaces, which shall be numbered 217, 222 and 227, will be created in the roofed portion of the multi-level parking facility, and three additional accessible parking spaces, numbered 284, 317 and 343, will be created in the exterior portion.
>
> [. . .]
>
> Reasonable accommodations:
>
> 1. It is agreed that within five (5) days of the effective date of this Agreement [Mora] will assign wheelchair accessible parking space #284 to [attorney Díaz] for his exclusive use during the duration of his residence. Meanwhile, [Torre Cibeles] will use [attorney Díaz'] deed assigned parking space #395.

(Docket No. 110, Exhibit 1, at 8).

On June 23, 2021, a couple of months after attorney Dávila's demise, the Commonwealth of Puerto Rico's Department of Motor Vehicles (DMV), issued Rivera a handicap parking permit. (Docket No. 1, Exhibit 1 at 19-20).

On July 15, 2021, several weeks after the issuance of the DMV permit, Rivera requested Torre Cibeles provide "accessible handicap parking at the second-floor door entrance to [the elevator] in Tower 1." (Docket No. 1, Exhibit 1 at 23). She reiterated her request on August 9, 2021, stating that "[o]ne of these doctors (referring to the parking owners) must cede to me the handicap parking space occupied illegally by them." (Docket No. 1, Exhibit 1 at 23).

Rivera expressed that because of the alleged illegal sale of parking spaces 172, 173, and 178, "there are no designated

---

Plaintiff was made aware of this through the partially submitted July 23, 2018 letter. (Docket No. 75, Exhibit 4 at 2). To the extent that the "Conciliation Agreement" between Mora and attorney Díaz is a public document, the Court may take judicial notice of it. *See* Arizmendi v. Lawson, 914 F.Supp. 1157, 1160-1161 (E.D. Pa. 1996) ("In resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies. . ."); *see also* (Docket No. 110, Exhibit 1, at 7) ("It is understood that, pursuant to Section 810(b)(4) of the Act, this Agreement upon approval of by the Region II Director or his designee, is a public document."); (Docket No. 110, Exhibit 1, at 4) ("Section 103.330(b) of HUD's regulations implementing the Act provides that Conciliation Agreements shall be made public, unless the aggrieved person and the respondent request nondisclosure and HUD determines that disclosure is not required to further the purposes of the Act. Notwithstanding a determination that disclosure of an Agreement is not required, HUD may publish tabulated descriptions of the results of all conciliation efforts."); 42 U.S.C. § 3610(b)(4) ("Each conciliation agreement shall be made public unless the complainant and respondent otherwise agree and the Secretary determines that disclosure is not required to further the purposes of this subchapter."). In doing so, the Court need not convert the Motion to Dismiss into a motion for summary judgment. *See* Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).

handicap parking spaces located at the entrance door which gives direct access to the elevators located at the second floor of Tower 1 of [Torre Cibeles]." (Docket No. 51 at 8, ¶ 14).

On September 22, 2021, 44 days after her request to the Association, Rivera filed her claim before this Court. She requests the Court "[nullify] the transfer of the three designated handicap parking spaces . . . and that they be restored" to their original status. (Docket No. 51 at 9, and 1 at 9).

B.   Background on Mora's Motion for Reconsideration

Against this backdrop, on August 19, 2022, Mora moved to dismiss all claims. It alleged that Plaintiff failed to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 77). Pertinent to the only claim remaining under FHAA, Mora argues it is time barred since it only provides a two-year statute of limitations and Rivera became aware of the private ownership of the handicap designated parking spaces 7 years prior to filing the Complaint. Mora further claims that Rivera's Complaint is void of any allegation as to a request for accommodation for which Mora had a responsibility to address as the developer and interim administrator of Torre Cibeles.

The Court denied Mora's Motion to Dismiss. It determined that the only surviving claim against Mora is timely. (Docket No. 105 at 13). Mora moves the Court to reconsider premised on

a manifest error of law. (Docket No. 110). It restates its statute of limitations argument and emphasizes that Mora's transfer of Torre Cibeles' administration to the Association occurred in 2014. Consequently, Mora ceased having any obligation over the administration of Torre Cibeles and may not provide Plaintiff any relief, including Rivera's request for reasonable accommodation. (Docket No. 110 at 6).

Plaintiff disagrees. She insists Mora "violated the law by illegally selling for a profit designated handicap parking spaces, as per plot plan filed before the pertinent authorities." (Docket No. 112 at 3, ¶ 5).

## II. APPLICABLE LAW

### A. Motion for Reconsideration

The Federal Rules of Civil Procedure "do not specifically provide for the filing of motions for reconsideration." Ramos-Cruz v. Emanuelli-Hernández, --- F.Supp.3d ---, 2023 WL 4041947 at *4 (D.P.R. June 16, 2023) (*quoting* Sánchez-Pérez v. Sánchez-González, 717 F.Supp.2d 187, 193-94 (D.P.R. 2010)). However, the First Circuit has held that a motion that moves the court to modify or alter an earlier disposition based on an erroneous legal result is considered under Fed. R. Civ. P. 59(e). *See* In re Spittler, 831 F.2d 22, 24 (1st Cir. 1987).

To prevail in a Rule 59(e) motion, the moving party "must either clearly establish a manifest error of law or must present newly discovered evidence." Markel Am. Ins. Co. v. Díaz-

Santiago, 674 F.3d 21, 32 (1st Cir. 2012) (*quoting* F.D.I.C. v. World Univ. Inc., 978 F.3d 10, 16 (1st Cir. 1992)). The Court should grant the motion for reconsideration if it "has patently misunderstood a party. . .or has made an error not of reasoning but apprehension." Ruiz Rivera v. Pfizer Pharmaceuticals, LLC, 521 F.3d 76, 82 (1st Cir. 2008) (*quoting* Sandoval Diaz v. Sandoval Orozco, No. 01-1022, 2005 WL 1501672, at *2 (D.P.R. June 24, 2005)). Lastly, the Court has "substantial discretion and broad authority to grant or deny" a motion for reconsideration. Ruiz Rivera, 521 F.3d at 81 (*citing* United States v. 5 Bell Rock Rd., 896 F.2d 605, 611 (1st Cir. 1990)).

B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rule does not require detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (*quoting* Twombly, 550 U.S. at 555) (internal quotations omitted). A pleading is also insufficient if it tenders "naked assertion[s] devoid of further factual enhancement." Id. (*quoting* Twombly, 550 U.S. at 557) (internal quotations omitted).

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Fed. R. Civ. P. 12(B)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (*quoting* Bell Twombly, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A plaintiff cannot defeat a motion to dismiss by making only conclusory legal allegations or by drawing unwarranted factual inferences. *See* Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (holding that "bald assertions, unsupportable conclusions. . .and the like need not be credited" at the motion-to-dismiss stage).

The First Circuit held recently in Lyman v. Baker, 954 F.3d 351 (2020), that the Rule 12(b)(6) standard is well established. First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (*citing* Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 7, 12 (1st Cir. 2011) (discussing, among other cases, Iqbal and Bell Twombly); *see also* Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016). Second, the Court "take[s] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing

all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55 (*citing* Ocasio-Hernandez, 640 F.3d at 12); *see also* Blum v. Holder, 744 F.3d 790, 795 (1st Cir. 2014).

Ultimately, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility or relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quotation and citation omitted).

C.  FHAA[7]

Congress enacted the Fair Housing Amendments Act in 1988 to "eliminate discrimination against and equalize housing opportunities for disabled individuals." Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 782 (7th Cir. 2002); Groome Res. Ltd. v. Par. of Jefferson, 234 F.3d 192, 200-01 (5th Cir. 2000) ("The purpose of the FHAA was to prohibit discrimination in the national housing market for handicapped individuals."). This statute is "broad and inclusive" and subject to "generous construction." Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 209 (1972).

The FHAA prohibits discriminatory housing practices based on a person's handicap. *See* 42 U.S.C. § 3604(f). The statute defines "handicap" as "(1) a physical or mental impairment which substantially limits one or more of [a] person's major life

---

[7] The Court incorporates its discussion on the FHAA at Docket No. 105.

activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). In turn, "discrimination" includes a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped persons] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

Particularly, the FHAA outlaws discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of an individual. 42 U.S.C. § 3604(f)(2). Indeed, courts have repeatedly held that the **refusal** to provide handicap parking spaces for persons with disabilities constitutes discrimination pursuant to the FHAA. *See, e.g.,* Astralis Condominium Ass'n v. Secretary, U.S. Dept. of Housing & Urban Development, 620 F.3d 62, 65 (1st Cir. 2010); Jankowski Lee & Assocs. v. Cisneros, 91 F.3d 891, 895 (7th Cir. 1996); Shapiro v. Cadman Towers Inc., 51 F.3d 328, 335 (2d Cir. 1995); Hubbard v. Samson Mgmt. Corp., 994 F. Supp. 187, 191 (S.D.N.Y. 1998); Weiner v. Prairie Park Condo. Ass'n, Case No. 16-1889, U.S. Dist. LEXIS 18660, at *12-13 (N.D. Ill. June 23, 2016).

To establish a *prima facie* case of failure to accommodate pursuant to the FHAA, a claimant must demonstrate: (1) that the person is handicapped within the purview of 42 U.S.C. § 3602(h);

(2) that the party charged knew or should reasonably have known of his or her handicap; (3) that the person requested a particular accommodation that is both reasonable and necessary to allow him or her an equal opportunity to use and enjoy the housing in question; and (4) that the party charged refused to make the requested accommodation. *See* Astralis Condominium Ass'n, 620 F.3d at 67.

### III. DISCUSSION

The Court now, guided by the Rule 12(b)(6) standard construes the facts of the Complaint in the light most favorable to Plaintiff and finds, irremediably, that absent pleading sufficiency as to Mora, the Court must dismiss the action.

A. ADA

Plaintiff's allegations against Mora under the ADA read as follows:

> The actions taken by all who have deprived and/are depriving persons with disabilities to have accessible and reasonable accommodation to park in a designated handicapped parking space are a clear and will violation of A.D.A Title III and must be addressed by this court, as this is a court of equity.
>
> (Docket No. 1 at 8, ¶ 18) (emphasis added).
>
> The actions of those who sold the designated parking spaces. . .are a clear violation of A.D.A Title III, all to the detrimental of those who suffer from disabilities and as such have been granted a handicap parking permit by the [DTOP]. Plaintiff is (sic.) one who was granted a handicap-parking permit by [DTOP] yet has not be assigned a reasonable accommodation for parking.

(Docket No. 1 at 8, ¶ 15) (emphasis added).

Plaintiff largely refers to the ADA to frame her allegations against Mora and to posit that the sales and purchases of parking spaces 172, 173, and 178 were unlawful. Yet, Plaintiff's ADA claims were dismissed. (Docket No. 101). Accordingly, there are no pending issues as to ADA and, as such, the Court could stop here. The Court, however, considers Plaintiff's allegations against Mora through the FHAA lens.

B.  FHAA

As indicated in Section II of this Opinion and Order, to survive a Rule 12(b)(6) motion, Rivera's Complaint must include sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Twombly, 550 U.S. at 570. That is not enough.

As the Complaint stands, Rivera's contention against Mora —under the FHAA— is that it: (a) "illegally" sold parking spaces reserved and designated for disabled persons in Torre Cibeles' Master Deed (Docket Nos. 1 at 8 and 51 at 8-9); and (b) failed "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling, 41 U.S.C. §[]3604(F)(3)(B)." (Docket No. 51 at 6).

In her own words:

> [Mora] [sold] for a profit. . .what is not for sale, knowing that their willful actions have major consequences for those with disabilities.
>
> (Docket No. 1 at 8, ¶ 16).
>
> Plaintiff demands that the three designated parking spaces be returned to [Torre Cibeles] as required by law and as registered at the Registry of the Property at plot of Condominium in Mother Deed.
>
> (Docket No. 1 at 7, ¶ 14).
>
> The fact that there are no designated parkings spaces at Tower 1 of [Torre Cibeles], directly in front if the door giving entrance to the second-floor elevator is a willful act on the part of all those involved, including [Mora]…
>
> (Docket No. 1 at 7, ¶ 13).

The threshold obstacle, however, is that Plaintiff's referenced averments, fail to proffer any factual basis leading to determine that Plaintiff has nudged her claims against Mora pursuant to FHAA "across the line from conceivable to plausible." *See* Iqbal, 556 U.S. 680. Plaintiff, for example, does not explain how or why the sale of the designated handicap parking spaces is a violation of FHAA.[8] Indeed, the sale of

---

[8] The Court is struck by the resonance of Plaintiff's cause of action for the alleged unlawful sale of three designated handicap parking spaces to a challenge of the actions by an interim administrator of a condominium for breach of a master deed under Act 129-2020 (Puerto Rico's Condominium Act). *See* P.R. Laws Ann. Tit. 31, § 1923j (stating that the Condominium Act covers "[t]he acts or omissions of the Boards of Directors, the Interim Administrator, Managing Agent" which "are contrary to the law, the master deed and bylaws of the condominium" or "if they are seriously prejudicial to the interests of the community or an owner."). That is also true for then

accessible spaces to residents without disabilities is not by itself an FHAA violation. *See, e.g.,* Jafri v. Chandler LLC, 970 F.Supp.2d 852, 863 (N.D. Ill. 2013) ("[W]hile the sale of accessible spaces to residents without disabilities is not by itself an [FHAA] violation, such sales may be an [FHAA] violation if they are made without providing alternative means for making the building accessible.").[9] Rivera's allegation, thus, amounts to an "unadorned, the-defendant-unlawfully-harmed-me accusation." Id. 556 U.S. at 662. More so, Plaintiff does not reference in her Complaint any section of a statute, or case law, to support her allegations of a supposed prohibition to sell the designated handicap parking spaces.

Further, to make a *prima facie* case of FHAA discrimination, Rivera needed to plead that: (1) Mora knew of her status as a handicap person; (2) she requested a reasonable accommodation to Mora after the sales of parking spaces 172, 173, and 178; and (3) Mora **refused** to honor her request. *See* Astralis Condominium Ass'n, 620 F.3d at 67. She did not.

As to (1), Plaintiff may not establish Mora knew of her disabled status because it is chronologically impossible. The fact is that Mora ceased to have an administration relationship

---

applicable Article 42 of Act 104-1958. *See* P.R. Laws Ann. Tit. 31, § 1293f. Notably, Puerto Rico's Department of Consumer Affairs ("DACO", by its Spanish acronym) would have primary and exclusive jurisdiction over such matters. *See* Díaz Arroyo v. Playa Dorada, Civil No. 22-1254, 2023 WL185503 at *5-6 (D.P.R. Jan. 12, 2023).
[9] Rivera admits that, after the sales in question, Mora provided a designated handicap parking space to attorney Dávila (R.I.P.). *See* Docket No. 1 at 6, ¶ 10, and 1 at 6, ¶ 11.

with the building —or any other connection— since 2014. Mora incontrovertibly transferred the administration of Torre Cibeles in 2014. Thus, it ceased control over Torre Cibeles. Rivera is aware of this fact. *See* Docket No. 75, Exhibit 4 at 2 (The sales of parking spaces 172, 173, and 178 "occurred in 2007, 2008, and 2010, with [Mora] being the developer and interim administrator of the condominium, proof that neither the [Association] nor its Boards of Directors intervened or benefited in any way as a result of these transactions. [Torre Cibeles]' administration transfer and creation of the [Association] and the first Board of Directors, was formalized in an Extraordinary Assembly held on September 23, 2014, many years after said transactions. . .").

The same is true for (2). At no point did Rivera request Mora to reasonably accommodate her. She couldn't have since Mora had no control over any of the parking spaces —or anything regarding Torre Cibeles— from September 2014 onward. Identical result is reached as to (3). Mora did not —and could not— refuse to provide Rivera a reasonable accommodation. It merely maintains that it cannot grant the requested relief —or any relief— because it has zero involvement in the building's affairs. In short, as to Mora, Plaintiff cannot establish a *prima facie* case of discrimination under the FHAA for which relief can be granted.

Her Complaint is simply insufficient to establish a set of facts in support of her claim which would entitle her to relief. Thus, the Court —in its substantial discretion and broad authority— grants Mora's request for reconsideration.

### IV. CONCLUSION

On reconsideration, the Court concludes that Plaintiff failed to state a claim in which relief can be granted against Mora. The Court **GRANTS** Mora's Motion for Reconsideration and, as to Mora, **DISMISSES** the Complaint with prejudice. Partial judgment shall be entered accordingly.

IT SO ORDERED.

In San Juan, Puerto Rico, this July 31, 2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE